UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BILLY WAYNE FARRIS, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 09-127-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ERIC WILSON, *Warden*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Billy Wayne Farris is confined in the United States Penitentiary-McCreary ("USP-McCreary") located in Pine Knot, Kentucky. On April 17, 2009, Farris filed a *pro se* Petition for writ of habeas corpus under 28 U.S.C. § 2241. Farris challenges disciplinary sanctions imposed against him at the Federal Correctional Institution ("FCI") Seagoville, which is located in Seagoville, Texas. Farris has paid the $5.00 filing fee [Record No. 7].

Specifically, Farris alleges that the Bureau of Prisons ("BOP") violated his right to due process of law, guaranteed by the Fifth Amendment to the United States Constitution, in connection with a disciplinary hearing which occurred at FCI-Seagoville on June 5, 2008. Farris was convicted of "Possession, Manufacture or Introduction of a Hazardous Tool" in violation of BOP Code No. 104. Farris was ordered to forfeit forty-one days of Good Conduct Time ("GCT").

Farris contends that there was insufficient evidence to support the punishment. He also argues that the presiding Disciplinary Hearing Officer ("DHO") failed to consider the

fact that he had a good disciplinary record prior to being charged with the Code 104 offense. Farris seeks the reinstatement of the forty-one days of GCT which he was ordered to forfeit as a result of the disciplinary proceeding.

The Court screens the petition in accordance with 28 U.S.C. §2243. *See also Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002).[1] Under 28 U.S.C. §1915(e)(2), a district court can dismiss a case at any time if the court determines the action is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). For the reasons set forth below, the Court will deny Farris's § 2241 petition for failure to state a claim upon which relief can be granted.

## I.

On May 2, 2008, while confined at FCI-Seagoville, Farris was charged with possessing in his cell an eight-inch, ice-pick style weapon. Possession of such a weapon violates BOP Prohibited Act No. 104, "Possession, Manufacture or Introduction of a Gun, Firearm, Weapon, Sharpened Instrument, Knife, Dangerous Chemical Explosive or Any Ammunition."[2]

---

[1] A *pro se* petition is held to lower standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in a § 2241 petition are taken as true and liberally construed in favor of the petitioner. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

[2] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. §541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

In the Incident Report, Officer Llewellyn states that on May 2, 2008, at approximately 2:00 p.m., he was conducting a random cell search of Cell No. J04-205, to which Farris was assigned. At that time, he found a prison-made weapon [*See* Incident Report, Record No. 2-2, p. 8, ¶ 11]. Llewellyn describes the weapon as "an ice-pick style weapon that is approximately 8 inches long." [*Id*.].

The Unit Disciplinary Committee ("UDC") referred the Code 104 charge to the DHO for disposition [*See Id*., ¶ 18(B)].[3] At the hearing, Farris waived staff representation and denied having ever used a shank [*Id*., § III(B)]. Inmate Leslie Davis testified on Farris's behalf. In his Report, the DHO summarizes Davis's testimony, stating that Davis testified that there was racial tension between the blacks and the Hispanics, and that the Hispanics were "trying to get things going." [*Id*., §III(B)(2)]. The Report further states that Inmate Davis testified that another inmate, identified as "Tatoo Mike," showed him a shank that looked like an ice pick. According to the DHO Report, "Tatoo Mike" told Davis that he planned to "set New York up" by putting a shank in his room. [*Id*., pp. 1-2, § III(B)(2)].[4]

On June 6, 2008, the day after the hearing, the DHO issued his Report. Relying on Officer Llewellyn's Incident Report, the DHO concluded that based on the greater weight of the evidence, Farris was guilty of possessing a weapon in violation of Code 104. The DHO

---

[3] Pursuant to 28 C.F.R. § 514.13, the UDC must refer any charged offense which falls into the "Greatest Severity Prohibited Act" category to a DHO for disposition.

[4] The reference to "New York" is not clear. Based on the DHO's summary of testimony, "New York" might be a prison slang term used to identify Petitioner Farris.

found no credibility in Farris's explanation that someone else placed the ice-pick style weapon in his cell without his knowledge. The DHO discounted Inmate Davis's testimony, noting that although Davis believed that someone else had "set-up" Farris, Davis had not observed either Farris or his cell-mate at all times.[5] The DHO ordered Farris to forfeit forty-one days of GCT and imposed other sanctions: (1) loss of 60 days in disciplinary segregation; (2) loss of 90 days of commissary privileges; (3) loss of 90 days of phone privileges; and (4) loss of 90 days of visiting privileges [*Id.*, pp. 3-4].

Farris filed a BP-10 administrative appeal to the proper BOP Regional Office. On July 16, 2008, G. Maldondo, Jr., Regional Director, responded to Farris's BP-10 appeal [Record No. 2-2, p. 5]. He affirmed the DHO's Report, stating that the DHO relied on the greater weight of the evidence in finding that Farris possessed a homemade weapon on May 2, 2008. Regional Director Maldondo noted that "[i]nmates are responsible for ensuring the immediate environs of their living area are free of contraband." [*Id.*].

---

[5]

In his Report, The DHO states as follows:

At the DHO hearing you denied any knowledge of the weapon. While your witness did not believe you or [cell-mate] Wiand had anything to do with the weapon, he was not observing you, Wiand, or your cell at all times and there would have been ample opportunity for you to hide this weapon in your cell without your witness knowing this.

In deciding this issue, I found no merit in your argument of defense. There would be no benefit to the staff member to lie about finding this weapon in your cell; however, it would be in your benefit to lie. Therefore, I find sufficient evidence to uphold that you have violated Code 104, Possession, Manufacture, or Introduction of a Weapon.

[*Id.*, p. 3].

Farris appealed Maldondo's decision to the BOP's Central Office. On August 18, 2006, Harrell Watts, the Administrator of Inmate Appeals, denied the BP-11 appeal. Watts stated that, upon review of the record, the BOP had substantially complied with PS 5270.07, Inmate Discipline and Special Housing Units. That Program Statement provides that if the facts are contradictory or conflicting, the DHO's decision should be based upon the greater weight of the evidence. While noting that Farris had disputed the charge, Watts concurred that the Code 104 conviction was appropriate and based on the greater weight of the evidence.

## II.

Petitioner Farris challenges the accuracy of the DHO Report, arguing that there was insufficient evidence to convict him of the Code 104 offense. Farris states that he had no knowledge that an ice-pick style weapon had been placed in his locker. He points out that at least 100 other inmates at FCI-Seagoville had unfettered access to his living quarters. He contends that any of them could have placed the weapon in his locker because his cell was not secured by prison staff [Record No. 2-2, p. 8]. Farris argues that he was in essence found guilty of only constructive, not actual, possession of the prohibited weapon, and he cites *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir. 1992), in support of his position.

Farris further argues that the DHO ignored the greater weight of the evidence, which he considered to be the statement he gave at the hearing and Inmate Davis's testimony that another inmate planted the weapon in his cell in order to "set him up." Farris concludes that another inmate placed the ice-pick style weapon in the locker area of his cell. He states:

> The DHO's findings did not conclusively show that the Petitioner actually had care, custody, or control or dominion over the weapon despite the fact that it was located in the locker area of Petitioner's cell. There was absolutely no evidence that petitioner possessed the "ice pick" found by prison guard.

[*Id*., pp. 9-10].

Petitioner Farris also argues that the DHO failed to consider that he is a non-violent prisoner serving a relatively short sentence. Farris further notes that he has neither a history of weapons possession in prison nor a prison history of violence "consistent with behavior charged in disciplinary actions in this case." [*Id*., p. 7]. Farris asserts that there were "numerous factors" which the DHO ignored in reaching his decision, and that the failure to consider his disciplinary history resulted in an excessive and unduly harsh sanction.

### III.

In essence, Petitioner Farris challenges what he perceives to be the BOP's "strict liability" policy concerning contraband and/or weapons: to wit, that inmates are responsible for ensuring that their quarters remain free of contraband or weapons, and that if contraband or weapons are found in any inmate's area, he will automatically be sanctioned without regard to the specific facts and circumstances surrounding the discovery. Unfortunately for Farris, the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. According to the Supreme Court in *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985), there need only be "some evidence" to support the disciplinary decision. Specifically, the Court held that,

> [a]ssuming that good time credits constitute a protected liberty interest, the

6

>revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the 'some evidence' standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55. Thus, "some evidence" is a lenient standard.

A district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes. *Superintendent*, 472 U.S. at 455. A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt. A district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457.

While the facts are not one hundred percent conclusive, there was adequate evidence upon which to base Farris's disciplinary conviction. Officer Llewellyn's Incident Report constitutes "some evidence" upon which the DHO was entitled to rely in finding Farris guilty. The DHO was not required to accept the petitioner's claim that others were responsible for the weapon discovered in his cell.[6] The discovery of the weapon in Farris's cell was sufficient to support the conviction. *Quintanilla v. O'Brien*, 127 Fed. Appx. 887, 888, 2005 WL 774372 (7th Cir. (Ill.) 2005) (Not selected for publication in Federal Reporter) (Prison guard's discovery of

---

[6]

*See Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 68 (6th Cir. March 15, 2004) (not selected for publication in the Federal Reporter) (where the facts were in dispute and the DHO determined that the greater weight of the evidence supported the finding that inmate Sarmineto committed the prohibited act of "tampering with a security device" under Code No. 208, the Sixth Circuit affirmed the district court's ruling that the DHO's decision was supported by some evidence, and that Sarmiento's constitutional rights were not violated).

seven-inch, hand-sharpened shank under federal prisoner's mattress provided "some evidence" sufficient to comport with due process and to support conviction for possessing dangerous contraband).

Farris asserts that the testimony upon which the DHO relied lacked credibility, but, as stated previously, an independent assessment of witnesses's credibility by a district court is not required. *Superintendent v. Hill*, 472 U.S. at 455. Additionally, Farris produces no authority for his argument that the DHO was required to have considered, as a mitigating factor, the fact that he had no institutional history of disciplinary infractions at FCI-Seagoville. The sanctions imposed by the DHO are clearly authorized by Table 3 of the "Prohibited Acts and Disciplinary Severity Scale" set forth in 28 C.F.R. § 541.13. The DHO did not exceed his authority be failing to consider Farris's prison record.

In *Hamilton*, the Seventh Circuit held that a prisoner constructively possessed weapons found in a cell which he shared with three others, but noted in dicta that, had the cell been accessible by thirty-two others as the prisoner alleged, the evidence would have been insufficient to support a conviction. *Hamilton*, 976 F.2d at 345. Farris points to *Hamilton* as supporting his argument that there was insufficient evidence to support his conviction. *Hamilton*, however, is not controlling.

In *Quintanilla*, the prisoner cited *Hamilton*, arguing that since he had never been seen holding the weapon, his was a case of constructive possession. *Quintanilla*, 127 Fed. Appx. At 888-89. He argued that the odds that the weapon discovered was his were too slim to conclude that its discovery constituted "some evidence." *Id.* He noted that since his cell door was kept

8

unlocked during the daytime, 240 other inmates had access to his cell, and therefore there was only a one-in-240 probability that the weapon was his. *Id.*

The Seventh Circuit rejected the notion that an inmate cannot be convicted based on the discovery of contraband in his cell because he shares an equal probability of guilt with each member of the prison's general population. *Id.* at 889. The court concluded that requiring prison officials to prove actual possession of contraband would amount to a rule requiring prisons to operate on a permanent lock-down basis. *Id.* The court rejected that theory, stating as follows:

> Absent evidence that other prisoners had entered his cell--and Quintanilla provided none--it would be unreasonable to ascribe an equal probability of guilt to the entire prison population. **Such an assumption would mean that in every prison that does not operate on continuous lockdown, finding drugs or weapons in a prisoner's cell would be insufficient evidence of malfeasance to support a conviction in compliance with the requirements of the Due Process Clause.** Like the district court, we believe that the discovery of the shank in Quintanilla's cell provides some evidence to support the conviction, and that summary judgment was therefore appropriate.

*Id*. (emphasis added).

Similarly, in *Gordon v. Yost*, 2006 WL 2345944, at *4 (W.D. Pa., April 10. 2006) (Only the Westlaw citation is currently available), the prisoner alleged that contraband weapons discovered in his cell were "plants" and that he should not have been convicted of possession based on the theory of constructive possession. The district court rejected that argument and the premise that prison officials should be required to prove anything more than "some evidence:"

> While it is possible that the weapon was a "plant," it is speculation that an inmate not assigned to the cell concealed a weapon where it would do him

9

> little or no good: it is more likely that the weapon in question here was hidden by one of the six inmates, including petitioner, who would have the readiest access to the weapon if needed. There is a difference between the low but real probability that petitioner is guilty, and the pure speculation that could make that probability as low as one would like. If the latter course were adopted, any prison that does not operate on continuous lockdown in single cells would be unable to convict an inmate of possessing contraband. A legal rule which produces absurd results is not one which is commanded by the Due Process Clause. Because there was "some evidence" to support the finding petitioner had constructive possession of a weapon, the petition should be denied.

*Gordon*, 2006 WL 2345944, at *4 (internal citation omitted).

In *Perez v. Rios*, 2009 WL 499141 (E.D. Ky. February 27, 2009) (unpublished disposition), this Court, Hon Karen K. Caldwell presiding, was faced with similar facts and legal arguments. In the case, knives were found in Perez's cell, and he was convicted of possessing a hazardous tool. Perez argued that the knives did not belong to him. The DHO found him guilty and sanctioned him to the forfeiture of forty-one days of GCT. The DHO noted that the knives were located within Perez's cell, an area unquestionably within his control. In denying Perez's § 2241 petition, Judge Caldwell relied upon the BOP's rule that inmates are responsible for ensuring that their cells remain free of contraband, finding that, under *Hill*, there was clearly sufficient evidence to support the DHO's finding that Perez had been in possession of a hazardous tool. *See also Kenner v. Martimer*, 2008 WL 2355832, at *3 (E.D. Ky. 2008) (unpublished disposition); *Sales v. Dewalt*, 2008 WL 1995135 (E.D. Ky. 2008) (unpublished disposition).

The Court agrees with the analyses of these cases. Applying these cases to Farris's § 2241 petition, the Court finds that there was "some evidence" to convict Petitioner Farris of the Code 104 offense. That is all that long-established case law requires. Because Farris's

disciplinary conviction was supported by "some evidence" as required by *Superintendent v. Hill*, his Fifth Amendment due process rights were not violated. The petition will be dismissed.

### IV.

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Billy Wayne Farris's 28 U.S.C. § 2241 petition for writ of habeas corpus is **DENIED**.

(2) This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

This the 8th day of October, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge